Grafton, }
Nov. 1, 1904. }

## LEE & a. v. DOW.

The admission of incompetent evidence does not furnish cause for reversal if an instruction to the jury to disregard the objectionable matter is sufficiently full and explicit to prevent the error from having effect.

Whether a trial was rendered unfair by incompetent testimony which the jury were instructed to disregard, is a question of fact determinable by the trial court.

The asking of a specific question in good faith, after the exclusion of general testimony upon the same subject, is not exceptionable.

A remark by the court during a colloquy with counsel, that further discussion might result in the reversal of a ruling, does not furnish cause for setting aside a verdict.

The admission of incompetent testimony which merely tends to prove a conceded fact is harmless error.

The question as to what portion of the argument of counsel is included within an exception claimed is one of fact determinable by the trial court.

The denial of a motion to set aside a verdict for improper argument of counsel is equivalent to a specific finding that the remarks objected to did not render the trial unfair.

A ruling by the trial justice is deemed to be accepted as the law of the case, unless an exception thereto is taken and noted at the time.

ASSUMPSIT, for a breach of a contract for labor. Trial by jury and verdict for the plaintiff. Exceptions by the defendant were transferred from the November Term, 1903, of the superior court by *Wallace*, C. J.

*Alonzo L. Chamberlin* and *Ira Colby & Son*, for the plaintiffs.

*Batchellor & Mitchell* and *Smith & Smith*, for the defendant.

CHASE, J. 1. Egbert Lee, in testifying with reference to his attempts to get work after his return to Springfield, said: " When the snow came I shoveled snow whenever I could get the snow to shovel; and the room I slept in was so cold I took the rheumatism, and had rheumatism dreadfully." The defendant excepting to the last part of the statement, the court excluded it, and the next morning, upon request of the plaintiffs' counsel, instructed the jury that it was withdrawn and that they should pay no attention whatever to it. In the final charge to the jury they were instructed that the plaintiffs were not entitled to damages for any sickness either of them may have had. The instructions certainly

seem to have been sufficiently full and definite to prevent the error from having effect (*Mason* v. *Knox*, 66 N. H. 545, 546); but whether the trial was rendered unfair by the occurrence is a question of fact which should be determined at the trial term. *Burnham* v. *Butler*, 58 N. H. 568; *Guertin* v. *Hudson*, 71 N. H. 505.

2. Mrs. Lee, one of the plaintiffs, being asked if she had trouble with the defendant's mother, who had charge of the house during an absence of the defendant and wife, and to state her peculiarities, replied: "Yes; she was a very peculiar woman, very irritable, hard to get along with." Objection being made by the defendant's counsel, the plaintiffs' counsel said: "I want to ask the witness about her general conduct and appearance, and how she was from time to time, with reference to shedding some light on matters in this case." In response to an inquiry by the court, the defendant's counsel said that they objected, and the court said, "I will exclude it now." Thereupon the plaintiffs' counsel asked this question: "Did Mrs. Dow get angry sometimes?" The defendant's counsel objecting, the testimony was excluded and no answer to the question was made. The defendant's counsel also excepted "to the putting of such a question." After further discussion the court said: "There is no need to discuss it. The court is with you. You may get me to rule the other way if you keep on." The defendant excepted to these remarks.

When the first question was put and answered, there seems to have been some doubt in the minds of the court and counsel as to the admissibility of the testimony. The defendant's counsel made no objection until the question had been answered. Upon the interposition of the objection, the plaintiffs' counsel stated his reason for asking the question. The court before making a ruling inquired of the defendant's counsel if they objected. Upon receiving an affirmative reply, he excluded the testimony "now,"—indicating that he had doubts about the correctness of the ruling and might revise it later. The doubt probably arose from a consideration of the question whether the proffered testimony was or was not too remote to be of service in deciding the issues. It is conceivable that if Mrs. Dow had peculiarities which affected her bearing toward the plaintiffs while she had charge of the house, the peculiarities might have some tendency to show whether or not the plaintiffs' conduct was reasonable cause, under the circumstances, for discharging them. Whether the evidence would have such tendency or not depended largely upon the other evidence in the case, and very likely required an exercise of the court's judgment upon the question of remoteness. The first question to the witness was general; it related to peculiarities

generally.   The second one related specifically to anger.   The circumstances have no tendency to show that it was asked with a view of impressing upon the minds of the jury the idea that the court was wrong, and influencing them to accept the testimony in spite of the court's ruling.   They tend to show, on the contrary, that the question was asked in good faith, with a view of present-ing the subject in mind specifically to the court's attention and thereby removing his doubt.   There is no reason for supposing that the court's ruling was not acted on by the jury, or that the trial was in any way rendered unfair by the asking of the ques-tion.   Nor does it seem probable that the subsequent manifesta-tions of impatience were regarded by the jury otherwise than according to their real character—as natural and harmless inci-dents of circumstances suddenly developed in the course of a closely and earnestly contested trial.

3.  To the question asked Mrs. Lee by her counsel, " Were you present when Mr. Dow said to your husband, ' Get right out here now—I do n't want you here any more?'" she replied, "Yes, but that was when he met him in the yard.   No, sir, I was n't present then.   He met him in the yard and said that, and he came right in and says, ' Mr. Dow says we must get right out.'"   The defendant excepted to the testimony, and the plaintiffs' counsel said: " What Mr. Lee said to you when Mr. Dow was not present, of course you won't state."   The witness replied, "No, I was n't present."   The court, jury, and counsel all must have understood that the witness' statement with reference to what occurred in the yard was not offered or put in evidence.   Furthermore, there seems to have been no dispute between the parties relating to the fact of the plaintiffs' discharge by the defendant; the only differ-ence in the testimony was in the forms of expression used at the time.   Evidently, this error was harmless.

4.  The plaintiffs' counsel in his closing argument to the jury said : " I want to say here—and it is sometimes as plain from what a man does n't do what the truth is, as it is from what he does do. Now they have been in the business of taking depositions ; large quantities of depositions have been put in here.   Had they gone to Springfield, Mass., where   .   .   .   the mother of Mrs. Dow lived, and where Lee had lived for years, and inquired there through her and other means, and taken depositions there, and Lee had been this lazy, shiftless man they have described, worthy of no confidence whatever, could n't they have proved it by depo-sitions here?   They would have been perfectly overwhelming.   I tell you, gentlemen, the reputation, the character of   .   .   .   Lee stands as plain and clear as the sun in the noonday heavens.   If they could have got at him, they would have done it.   If Lee is a

liar,—no reputation there,—they would have impeached him and Mrs. Lee upon the stand here, and there would n't have been any question. Gentlemen, the manner in which they have approached these parties, under the circumstances, coming up here to attend to this matter in this way, is not only unjust, but I never in the whole course of my professional life have seen such an attempted outrage on anybody." The defendant excepted. The court said: " Mr. Colby, I do n't think you have a right to state anything of that kind ; anything you have seen is not testimony in this case." Mr. Colby said : " What I have seen in my professional life you may leave out." The court said to the jury: " Gentlemen, you are not to regard that. The counsel have no right to state what they have seen." Mr. Colby said : " I say on the fact itself before you the same thing, leaving out anything regarding my professional life." The defendant's counsel did not state the ground of their exception, and the court understood that the exception was limited to the statement of what counsel had seen, and so treated it. The counsel, however, thought their exception related to all that portion of the argument above quoted. The evidence was that the plaintiffs lived in Springfield for years, and that the mother of the defendant's wife lived there and knew them. There was no evidence about the plaintiffs' reputations for truth, or that depositions were taken in Springfield. Several depositions taken elsewhere were introduced in evidence.

The question whether the exception related to all that portion of the argument quoted, or only to the statement of the counsel's professional experience, is a question of fact, which, if material, should be determined by the trial court. *Walker* v. *Railroad*, 71 N. H. 271, 274. If it appeared that the exception was as comprehensive as the defendant intended it should be, it could not be sustained in respect to those parts of the argument prior to the last sentence, for they were not objectionable. *Mitchell* v. *Railroad*, 68 N. H. 96, 117.

The defendant's motion to set aside the verdict stated as a reason the " misconduct of the counsel for the plaintiffs in arguing in the closing argument matters not in evidence and misstating the evidence, all of which tended to mislead and prejudice the jury against the defendant, and as a matter of fact did have that result; and by reason thereof the defendant has not had a fair and impartial trial, which the law of the land accords him." The question of fact, whether the jury were misled and prejudiced and the trial was rendered unfair by the misconduct alleged, was distinctly presented to the presiding justice by this motion ; and his denial of the motion necessarily shows that he decided the question in the negative. The facts reported fully sustain such a finding. The

counsel immediately withdrew the objectionable remark, and the court instructed the jury to disregard it. The silence of the defendant's counsel after this was done had a strong tendency to lead the court and opposing counsel to understand that the error was satisfactorily cured, and that there was a waiver of further efforts in that direction. *Felch* v. *Weare*, 66 N. H. 582; *State* v. *Saidell*, 70 N. H. 174. The law will not disturb the verdict under these circumstances, although it does not justify the making of the objectionable remark.

5. The statement of counsel relative to the manner in which the defendant's wood was sawed, if not supported by the evidence, was immaterial. If error, it was harmless. Furthermore, the statement seems to have been changed so as to be satisfactory to the defendant.

6. Several objections were made in the course of the argument of the plaintiffs' counsel that were not accompanied or followed by an exception, and the court did not understand that an exception was intended. Objections of this nature are ineffectual as foundations for raising questions of law. Under the well established practice of this state, unless exception is taken and noted it is conclusively understood that the ruling is accepted as the law of the case.

7. Whether Lee's absence, October 5, was sufficient cause to justify the discharge of himself and wife depends in part upon the length of the absence and the effect of it upon the performance of their duties. An absence of two hours might not be unreasonable under the circumstances, while one of seven hours might be unreasonable. The evidence bearing upon this question was conflicting. The same is true of the evidence bearing on the question of the alleged agreement for a discontinuance of the contract. These questions were submitted to the jury, presumably with unobjectionable instructions. There is nothing in the record tending to show that there was any error of law in the denial of the motion to set aside the verdict, as against the evidence. *Wendell* v. *Safford*, 12 N. H. 171; *Houston* v. *Clark*, 50 N. H. 479, 483; *Colburn* v. *Groton*, 66 N. H. 151, 154; *Wilbur* v. *Berry*, 71 N. H. 619.

*Exceptions overruled.*

All concurred, YOUNG, J., in the result.