Coös,
March 6, 1917.

### JOSEPH FULLER *v.* MAINE CENTRAL RAILROAD.

In an action against a railroad for negligently injuring a traveler upon a grade crossing, the question whether he saw the train approaching on a curve was properly left to the jury, there being reasonable doubt whether the train was visible to him as he approached and looked toward the crossing; so also, the question was properly submitted, whether he should have looked up the track far enough to see the train.

On the question of the due care of a traveler injured by a railroad at a grade crossing, evidence of his knowledge of a prior accident at the same place is relevant to show the dangerous character of the crossing and his probable due care.

If evidence has been admitted *de bene* and the objection be not afterwards obviated, the evidence may be withdrawn and any prejudicial effect thereof will be cured by an instruction to the jury to disregard it, unless the court find that they were in fact influenced thereby.

An objection to hearsay is waived if the objecting party introduce evidence to establish the same fact.

The prejudicial suggestion by counsel in argument of a fact not in evidence is ground for setting aside a verdict, though the suggestion be interrogative in form and though withdrawn by counsel on advice of the court, unless it appear that the jury were not influenced thereby.

Evidence which though irresponsive is not prejudicial is not ground for setting aside a verdict.

CASE, for negligently injuring the plaintiff, a traveler on the highway, at a grade crossing. Trial by jury and verdict for the plaintiff. To the denial of the defendant's motions for a nonsuit and a directed verdict the defendant excepted. It also excepted to the admission of certain evidence. The facts are sufficiently stated in the opinion. Transferred by *Chamberlin,* J., from the December term, 1915, of the superior court.

*Edgar M. Bowker* and *Sullivan & Daley (Mr. Bowker* and *Mr. Sullivan* orally), for the plaintiff.

*Drew, Shurtleff, Morris & Oakes (Mr. Morris* and *Mr. Oakes* orally), for the defendant.

WALKER, J. The defendant's argument in support of its motion for a nonsuit and a directed verdict is that, while conceding its

negligence, the plaintiff cannot recover because it conclusively appears that he was guilty of negligence contributing to his injury. The attempt is made to prove this statement by showing that if the plaintiff was looking alternately up and down the track while he was approaching the crossing, as he testified, he would have seen the train in ample time to have stopped his horse and avoided a collision with the train.   It is insisted that notwithstanding his testimony that he did not see the train until it was upon him, the physical situation demonstrates that, if he looked, he must have seen the approaching train, and that it necessarily follows that he was carelessly riding along the highway giving no heed to a danger which a glance up the track must have disclosed to him, at any time while he was passing over sixty feet of the highway before reaching the crossing.   Many cases are cited and discussed in support of this position.

While the legal proposition involved in the argument may be sound, it is clear that the facts upon which it is based must appear to be conclusive, before the question of the plaintiff's care can be taken from the jury and decided as a question of law.   If there is a reasonable doubt whether the train was visible to the plaintiff as he approached the crossing, if the situation of the railroad track and the highway was such that though he looked toward the track he might as a reasonable man have failed to observe the train, the conclusiveness of the argument is destroyed, and the question, whether he saw the train or not, would become one for the jury. Between the highway and the railroad track, beginning at a point some distance above the crossing, there is an embankment which prevents a traveler on the highway, going towards the crossing in the direction the plaintiff was traveling, from seeing a train passing through the cut until it reaches the point where the embankment ceases.   If he is sixty-eight feet from the crossing, according to measurements made by defendant's witnesses, he might be able to see a train four hundred and fifty feet up the track from the crossing. But, as the highway and the track are substantially parallel at this point, he would be obliged to turn his head to the right and look back over his right shoulder in order to see the train.   And this would be true at other points on the highway and nearer the crossing, until the track takes a sharp curve to the left just above the crossing. While the train was coming around this curve and onto the crossing, the plaintiff would have hardly more than an instantaneous view of the train, or if he was looking down the track he would not see it

at all.   Upon these facts, which the photographs introduced by the defendant as well as the testimony in the case strongly support, it is, to say the least, somewhat inaccurate to say that the train was in full view of the plaintiff while he was traveling towards the crossing. If he turned round far enough to the right the statement may be true, but if sitting in his carriage in the ordinary way he was looking directly at the track in front of him, as he testifies he was, it would not be true.   Hence it does not conclusively appear that, if he was looking, he saw the train before it came around the curve at a rate of about thirty miles an hour and collided with his team.

Whether he ought to have looked up the track far enough to see the train, is a question relating to the conduct of prudent men in the same or similar circumstances, in regard to which reasonable men might differ, and was properly determinable by the jury.   One of the circumstances bearing upon this question was the fact as testified to by the plaintiff that he relied upon the usual signals of the ringing of the bell and the blowing of the whistle when a locomotive is about to occupy a crossing, and that he did not hear such warning sounds.   In accordance with the theory upon which the verdict for the plaintiff was found those signals were not given, and the inference is he assumed there was no danger in crossing the track.   He did not rely exclusively upon his ability to actually see a train, but also upon his ability to hear the usual warning sounds which he had a right to assume an approaching locomotive would give.   If he had understood that no signals would be given, a greater degree of care in attempting to see the train might have been necessary for his protection.   The whole matter resolves itself into a question of reasonable care which the jury were properly permitted to pass upon in favor of the plaintiff.   The verdict upon that issue was justified by the evidence. *Stearns* v. *Railroad*, 75 N. H. 40; *Jones* v. *Railroad*, 77 N. H. 220; *Doody* v. *Railroad*, 77 N. H. 417.

The defendant excepted to the testimony of a witness, who was working at a house near the place of the accident and who having testified that she did not hear the bell or the whistle of the locomotive, said, in answer to a question by the plaintiff whether she always heard the train, that she did, but that there were a few times when it whistled after it passed the crossing.   At the time this evidence was admitted it did not appear how long she had been working near the crossing.   The objection to its admission was that it related to facts that occurred after the accident, and was, therefore, incompetent.   But while it did not appear that what she observed happened

after the accident, its admission would not be erroneous even if such had been the fact. If it was not too remote,—a question of discretion for the court,—it tended to show that the engineer who regularly ran this train was negligent on other occasions in not giving the usual crossing signals and probably omitted them on the occasion in question. *Proctor* v. *Company*, 70 N. H. 3; *State* v. *Railroad*, 58 N. H. 410; *Cooley* v. *Company*, 75 N. H. 529; *Stone* v. *Railroad*, 72 N. H. 206.

The same witness was asked whether the train whistle was any signal for her that a boy in the family should go to work. The question was allowed subject to exception, and the answer was, "Well, we generally told him the train was—." It does not appear why the answer was not finished. But whatever the reason may have been, it is difficult to see what information the jury could get from such an incomplete, indefinite, irresponsive answer. If the question was objectionable upon the ground urged, that it called for a habit of the family after the time of the accident, the answer could have had no weight in producing the verdict. It was not responsive to the question. So far as it went it was not prejudicial. *State* v. *Gross*, 76 N. H. 304, 308; *Proctor* v. *Blanchard*, 75 N. H. 186; *Wilmot* v. *Vannah*, 75 N. H. 164.

The deposition of one Nevin was introduced by the plaintiff, in which he testified that he was present at the crossing soon after the accident happened and saw two or three railroad employees who were testing the automatic bell-signal at the crossing, which the plaintiff claimed did not ring when he was injured, and that a Western Union Telegraph agent who arrived on a hand car told him that he had instructed the men not to test the bell on the side of the crossing from which the train came that struck the plaintiff, as the signal was liable to be out of order. To this evidence the defendant objected upon the ground that it did not appear that the telegraph man was authorized by the defendant to make that admission in regard to the condition of the signal or to direct the men in their work. The court admitted the evidence upon the condition that the plaintiff would make it competent later in the trial, and the defendant excepted. Subsequently the plaintiff's counsel stated to the court that he was unable to comply with the condition, and moved that the evidence be stricken out and the jury be instructed not to consider it. The defendant objected to this procedure, and after the court had distinctly and unequivocally told the jury that they must lay the evidence out of the case and not consider it or

give it any weight, the defendant excepted. The ground of the exception is that prejudicial evidence was thus illegally introduced into the case, the effect of which upon the minds of the jury could not be eliminated by the court's charge. It is to be noted that there is no suggestion in the case that plaintiff's counsel did not act in good faith. It often happens in the trial of cases that evidence is admitted which at the time is incompetent, with the understanding that the defect will be obviated by other evidence. *Soucier* v. *Company*, 77 N. H. 118. If it is not thus obviated, the practice is that the evidence is withdrawn by the party introducing it and the court instructs the jury to disregard it. It is then held that the error is cured in the absence of a finding by the court that the jury were in fact influenced by the incompetent and prejudicial evidence. The presumption is that they obeyed the instructions. The rule is well stated in *Mason* v. *Knox*, 66 N. H. 545, 546, where it is said: "If the evidence is seasonably and properly withdrawn, and it is not found that it had a prejudicial effect upon the verdict, the error occasioned by its introduction is regarded as harmless." This practice has received the sanction of numerous cases. *Hamblett* v. *Hamblett*, 6 N. H. 334; *Deerfield* v. *Northwood*, 10 N. H. 269; *Zollar* v. *Janvrin*, 47 N. H. 324; *Burnham* v. *Butler*, 58 N. H. 568; *Davis* v. *Manchester*, 62 N. H. 422; *Lee* v. *Dow*, 73 N. H. 101; *Spinney* v. *Meloon*, 74 N. H. 384; *Conn. River Power Co.* v. *Dickinson*, 75 N. H. 353, 356. This exception is unavailing.

One of the plaintiff's witnesses was allowed to testify that some years before the accident in question a man was killed at this crossing, and the defendant excepted. Upon cross-examination it appeared that the witness had no personal knowledge that a man was killed there and that his testimony was hearsay. Under such circumstances the defendant's remedy was by motion to the court to strike out the evidence, and not by exception to its admission. Moreover, it appeared that subsequently a witness for the defendant in answer to a question by the defendant testified that a man was killed there several years ago. The fact of the fatality was thus practically admitted and the defendant's exception to the testimony of the plaintiff's witness even if hearsay was waived. *Rowell* v. *Railroad*, 58 N. H. 514; *Wiggin* v. *Damrell*, 4 N. H. 74; *Foye* v. *Leighton*, 24 N. H. 29. But the defendant contends that the fact was immaterial and prejudicial. The evidence, however, was admitted for the purpose of proving the dangerous character of the crossing and the probable care of the plaintiff who, it appeared, knew of the former accident. It is to be presumed in the absence

of evidence to the contrary that the physical situation at the crossing had not changed and that the necessity for caution on the part of the railroad and travelers at that point was substantially the same. The admission of the evidence as competent proof in connection with the plaintiff's knowledge, in the discretion of the court, was not erroneous.  *Marcotte* v. *Company*, 76 N. H. 507.

But this evidence did not authorize the use made of it by the plaintiff's counsel in argument.  Referring to the former accident he said: "Was that man asleep?  Did they blow their whistle there and ring the bell there at that time?  I have no doubt if his family tried to recover something, that they had a lot of evidence that they did so and so,—"  At this point the defendant excepted, and the court, without directly ruling on the exception, remarked that he thought it was a very dangerous argument; whereupon plaintiff's counsel withdrew it on the advice of the court.  The matter was then dropped and was not again referred to.  As there was no evidence in the case tending to show that the whistle was or was not blown upon that occasion or that the bell was or was not rung, it was not competent for counsel in argument to state that those warnings were not given, as a basis for the inference that it was a habit or custom of the defendant to omit those precautions.  The interrogative form calling the attention of the jury to the assumed fact was hardly less objectionable than an affirmative statement would have been.  *Demars* v. *Company*, 67 N. H. 404, 407; *Holman* v. *Railroad*, 76 N. H. 496.  As it does not appear that the jury were not influenced in returning a verdict for the plaintiff by the prejudicial suggestion of a fact not in evidence, and as it is not found and is not a necessary conclusion that the court and the parties understood that the plaintiff's retraction cured the error (*Felch* v. *Weare*, 66 N. H. 582, 583; *Palmer* v. *Dimick*, 77 N. H. 565), the exception must be sustained upon the record as it now stands.  If the plaintiff should procure an amendment of the case to the effect that the trial, as a matter of fact, was not rendered unfair by the illegitimate argument, the exception will be overruled.  *Bullard* v. *Railroad*, 64 N. H. 27, 36.

Other exceptions were taken by the defendant in the course of the trial, which have not been argued by its counsel and which do not appear to be tenable.  The result is that the exceptions to the denial of defendant's motion for a verdict and to the evidence are overruled, and the exception to the argument of plaintiff's counsel is sustained.  Upon the record as it stands the order must be

*Verdict set aside.*

All concurred.